LEATHERS *et al. v.* BINKLEY *et al.*

(*Nashville,* December Term, 1953.)

Opinion filed February 11, 1954.

REBECCA THOMAS, of Nashville, and W. M. LEECH, of Charlotte, for plaintiffs.

FRANK S. HALL, of Dickson, WILLIAM WALLER, JR., and WALLER, DAVIS & LANSDEN, all of Nashville, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal rises from a contest of the will of Rosa Reynolds Merryman, tried before a jury in the Circuit Court of Dickson County. The jury found against the will, the Trial Judge approved the verdict, and on appeal to the Court of Appeals, that Court affirmed. We granted certiorari, have heard argument and the case is thus before us for disposition.

After the death of Mrs. Merryman, the persons named as executors in the alleged will presented it in the County Court for probate, and the will was duly probated in common form, with the order of probate reciting that all details of execution and attestation necessary to make the will legal and valid, had been fully met and complied with.

After the order of probate, the contestants filed their petition of contest in the County Court reciting the details of the probate in common form, and alleging that the document so probated was not the will of Mrs. Rosa Merryman, because in the execution of said paper the provisions of Chapter 125 of the Public Acts of 1941, Code, Sec. 8098.4, had not been complied with, in that (1) Mrs. Merryman did not sign the paper in the presence of the witnesses, (2) did not declare to both of said wit-

nesses in the presence of each other that said paper writing was her last will and testament, and (3) the witnesses thereto did not sign in the presence of each other. After said petition was filed, answers were filed by the defendants named, who denied the material averments of the petition, and on the pleadings so made up with the original paper writing, which had been probated as the last will, the case was certified to the Circuit Court, and there tried on the issue devisavit vel non before a jury.

"The proceeding to set aside the probate in common form constitutes a new suit, and a good prima facie cause of action must be made to appear, and that in a reliable form, before an issue will be made to test the validity of a will already allowed by the judgment of a court of competent jurisdiction." Sizer's Pritchard on Wills, Sec. 352, p. 395; *Wynne* v. *Spiers*, 26 Tenn. 394, 407; *Cornwell* v. *Cornwell*, 30 Tenn. 485, 486; *Roberts* v. *Stewart*, 32 Tenn. 162, 165; *Keith* v. *Raglan*, 41 Tenn. 474; *Miller* v. *Miller*, 52 Tenn. 723.

A verbatim copy of the signature and attestation of the proposed will are as follows:

"(Signed)
*Rosa Reynolds Merryman*

Witness: *Jean Gilmer*
Witness: *Will Morrison, Jr.*

Sworn to and subscribed
before me this *23* day of Sept. *1949*
Notary          *Randall Clayburn*
Seal            Notary Public
My commission expires Jan. 14, 1951."
(Matter in script is italicized; the rest is typewritten.)

Will Morrison, Jr., the first witness called for the proponents, testified that he had known Mrs. Merryman in her lifetime since he was 13 years of age; that he remembered when she had come into his office carrying the will with her, and asked him to witness it. That he had seen Mrs. Merryman sign the will, and that his signature on the will was genuine, that he had requested his secretary, Mrs. Jean Gilmer, to witness the will, that his desk and Mrs. Gilmer's desk were near together in the same room where Mrs. Merryman executed the will. He did not remember whether he had asked Mrs. Gilmer to witness the will before or after Mrs. Merryman had signed it; nor did he remember whether or not Mrs. Merryman had asked Mrs. Gilmer to witness the will, but in the course of his testimony, he was asked and answered the following question:

"Q. Was this will executed, or signed by Mrs. Rosa Reynolds Merryman, in your presence and in the presence of Jean Gilmer, and signed by you and Jean Gilmer in the presence of Mrs. Merryman? A. Yes."

The other witness to the will, Mrs. Jean Gilmer, was asked and answered the following questions:

"Q. * * * Now I hand you what purports to be— what purports to be Mrs. Rosa Merryman's will— and ask you if your name appears on that will as a witness? A. Yes.

"Q. Who wrote your name on that will, did you write that? A. I did.

"Q. Now why did you write it on there? A. I am sure they asked me to.

"Q. Did you know Mrs. Rosa Merryman? A. Yes.

"Q. Had she been the office on more than one occasion? A. Yes.

"Q. So then you did know her? A. Yes.

"Q. How far, at that time, were you away from Mrs. Merryman, what distance apart were you, would you say the desks were apart,—were you as close as I am to you now? A. About.

"Q. About like that. Now in speaking of the hearing condition of the office, standing by his table, could you hear them talking? A. Yes, sir."

The testimony of the Notary Public was entirely negative, since he remembered nothing about the occurrence except that he identified his own signature and seal, and testified them to be genuine.

While it is true that neither Mr. Morrison nor Mrs. Gilmer remembered every detail of the signature and attestation of the will, the important fact in the record is that there was neither from Morrison, Mrs. Gilmer, nor the Notary Public, a line of positive affirmative testimony that would support the allegations of the petition of contest, nor the verdict of the jury, that the will had not been regularly and legally executed in strict accordance with the requirements of Code, Sec. 8089.4.

"Where, for instance, the subscribing witnesses testify that they do not recollect the circumstances, but do recognize their signatures, and declare that they would not have placed them to the instrument unless they had seen the testator sign it, or heard him acknowledge his signature, the due execution may be presumed." Sizer's Pritchard on Wills, Sec. 336, p. 380.

"In establishing the facts essential to the validity of the will by a preponderance of the evidence, proponents are, however, not obliged in all cases to prove

each fact by direct evidence; but they may rely upon presumptions. There is, at the outset, no presumption that the alleged testator executed the will in question or any will; but when a paper propounded as a will is shown to have been signed by the alleged testator and the requisite number of witnesses, *in the absence of any satisfactory evidence to the contrary* the presumption is that all the formalities have been complied with.'' (Our emphasis.) Page on Wills, Vol. 2, Sec. 755, p. 462.

The foregoing statement is supported by cases from many jurisdictions, including Georgia, Illinois, Iowa, Missouri, Montana, New Jersey, New Mexico and South Carolina. Compare: Annotations, 47 L. R. A., N. S., 722; 76 A. L. R. 604; 14 L. R. A., N. S., 255; Ann. Cas. 426.

■ To protect the right of testamentary disposition of property, we must sustain a will as legally executed if it is possible to do so, Sizer's Pritchard on Wills, Secs. 384, 386, et seq.; 57 Am. Jur., Wills, sec. 218. Compare: *Ball* v. *Miller,* 31 Tenn. App. 271, 214 S. W. (2d) 446.

■ The contestants put on no witnesses and introduced no proof. There was no evidence from the witnesses of the proponents that would warrant an inference that all necessary statutory requirements in the signature and execution of the will had not been met.

By the fourth assignment of error made to support the petition for certiorari, it is insisted that there was no material evidence to support the verdict of the jury. This assignment of error is valid and must be sustained.

Accordingly, under the foregoing authorities, the judgment of the Court of Appeals, and that of the Circuit Court are reversed, and the case is remanded to the Circuit Court for entry of a judgment in accordance with this opinion. Contestants will pay the costs.