

FILED

August 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

**IN THE COURT OF APPEALS OF TENNESSEE**

**EASTERN SECTION**

IN RE:

The Estate of ECKLE S. ROSS,

        Deceased.

) C/A NO. 03A01-9703-CH-00099
)
) KNOX CHANCERY
)
) HON. H. DAVID CATE,
) CHANCELLOR
)
) REVERSED AND REMANDED

PAUL T. COLEMAN and JASON I. EPSTEIN, BAKER, DONELSON, BEARMAN & CALDWELL, Knoxville, for Appellant/Proponent First Tennessee Bank National Association.

A. BENJAMIN STRAND, JR., STRAND & GODDARD, Dandridge, for Appellee//Contestant Sonia Amos,
and
CARLYLE URELLO, PAINE, SWINEY, AND TARWATER, Knoxville, for Glenda Ross, Stephanie Ross and Jennifer Ross.

**O P I N I O N**

Franks. J.

In this action the Trial Court determined that the execution of decedent's will did not meet the statutory requirements for admitting the will to probate, and the proponent of the will has appealed.

T.C.A. §32-1-104 sets forth the requirements for executing a valid Last

Will and Testament:

> **Will other than holographic or nuncupative.-** The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:
>
> (1) The testator shall signify to the attesting witnesses that the instrument is his will and either: (A) Himself sign; (B) Acknowledge his signature already made; or (C) At his direction and in his presence have someone else sign his name for him; and (D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.
>
> (2) The attesting witnesses must sign: (A) In the presence of the testator; and (B) In the presence of each other.

Decedent's will was witnessed in the Powell branch of First Tennessee Bank. Three employees present in the bank were asked to assist in the execution of the will. The bank is the designated executor of the will.

The execution of the will took place within the lobby of the bank. The Chancellor in his findings said:

> On April 22, 1986, Eckel S. Ross, the decedent, went with James Robert Pearson, an attorney and the preparer of the will at issue, to the Powell branch of the First Tennessee Bank for the purpose of executing the will.
>
> There is some conflict in testimony of James Robert Pearson, the attorney, and Shirley Smith and Norma Lucas, the attesting witnesses, and Brenda Stegall, the notary public, who notarized an affidavit of the attesting witnesses. With the exception of Pearson, the three ladies were employees of the First Tennessee Bank and worked at the Powell branch.
>
> The execution of the will took place within the confines of one room at the Powell branch.

The first witness to the will, Norma Lucas, testified that she was at the desk with decedent when he signed his will. In court, she testified that she was aware that it was decedent's will, but according to a discovery deposition taken years earlier, she did not understand that she was witnessing a will.

The second witness to the will, Shirley Smith, testified that she was in a teller's window, approximately 17 feet from the desk where the decedent was sitting. She testified that she was unaware of what he was signing until a third bank employee,

2

Brenda Stegall, asked her to witness the decedent's signature. The decedent and Lucas had already signed the will before she was asked to participate. She remained at her window while signing the document and Stegall took it back to decedent. Ms. Stegall, a notary public, testified that she saw everyone sign the will, and that the deceased signed in the presence of herself and the witnesses.

The Trial Judge determined that the will failed to meet the statutory requirements of execution of a valid will. Specifically, he found that Shirley Smith being positioned across the room, and unaware of the proceedings, meant that Lucas could not have signed "in the presence" of the other attesting witnesses. He found that Norma Lucas did not understand that the document she was signing was a will.

We reviewed the Trial Court's findings in this case *de novo* upon the record, which is accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. T.R.A.P. Rule 13(d). Proof of genuine signatures of the testator and attesting witnesses, along with an attestation clause reciting that the will was properly executed, creates a rebuttable presumption of due execution. *In re Estate of Bradley*, 817 S.W.2d 320, 323 (Tenn.App.1991). Proponents of a will are not obliged to prove each fact essential to a will by direct evidence; in the absence of any satisfactory evidence to the contrary, the presumption is that the formalities required have been met. *Cooper v. Austin*, 837 S.W.2d 606, 612 (Tenn. App. 1992), *citing Leathers v. Binkley*, 196 Tenn. 80, 264 S.W.2d 561, 563 (1954).

One of the Trial Judge's bases for invalidating the will was a finding that the first witness, Ms. Lucas, had not understood that the document that she was signing was a will.

It is well established that the act of witnessing a will is different from witnessing an ordinary signature and that the attesting witness must be aware that the

document is a will. *Ragsdale v. Hill*, 269 S.W.2d 911 (Tenn.App. 1954). The Trial Court's finding was based on Lucas' contradictory testimony; in court she professed to knowing that it was a will, while in her earlier deposition she had stated that she did not know. Contradictory statements by a witness in connection with the same fact may cancel each other. *Price v. Becker*, 812 S.W.2d 597 (Tenn.App. 1991); *Cooper v. Austin.* The rule of cancellation applies when the inconsistency in testimony is unexplained and when neither version of the testimony is corroborated by other evidence. *State v. Matthews*, 888 S.W.2d 446, 450 (Tenn.Cr. App. 1993), *citing Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476, 483 (Tenn.App. 1978).

The record reveals that Lucas had no explanation for why her answers to the question of "did you know the document was a will?" were inconsistent. Accordingly, there is no positive testimony contradicting the attestation clause, the presumption of proper execution remains and her testimony does not invalidate the execution of the will. *Cooper.*[1] The evidence preponderates against the Trial Court's findings, and supports the finding created by the presumption that Lucas was aware that the document was a will. *See Interstate Fire Insurance Co. v. Kimbrough*, 852 S.W.2d 887 (Tenn.App. 1992).

The circumstances surrounding the attestation of the second witness, Ms. Smith, presents a more difficult issue. This jurisdiction has no case directly addressing the elements necessary for the testator and witnesses to be in each others "presence." This term is generally construed according to the circumstances of each case. 79 AmJur2d, Wills, §321 (1975). Emphasis is placed on the ability of the testator to actually see or be able to see the witnesses if he/she wished. *Id; Stanley v. Kelley,* 102 So.2d 16, 18 (Ala. 1958) ("[it] is not necessary to prove that testator

---

[1] It can also be said that the attestations clause corroborated Lucas' in court testimony.

4

actually saw the witnesses sign their names to the will. It is sufficient if, from their relative positions, he could see them."); *Moore v. Glover*, 163 P.2d 1003, 1006 (Okla. 1945) (witness and testator sufficiently in each others' presence where testator waited outside in the car while witness signed at desk inside building; testator could see witness through large glass window). An attestation in the same room or close vicinity with the testator is generally considered to be in his/her presence, unless there is a physical obstacle blocking the view. *Id.* at §322; *In re Estate of Holden*, 113 N.W.2d 87, 92 (Minn. 1962); *Estate of Politowicz*, 304 A.2d 569 (N.J.Super. 1973). These authorities reveal that relatively short distances, such as across the bank lobby, may not necessarily prevent the testator and witnesses from being in each others' presence. Smith had known decedent, and saw him enter the bank and conduct business at Ms. Stegall's desk, she testified that she did not know he was signing the will, but she was sure it was his will when she signed as a witness. She recognized his signature and she was expressly told it was decedent's will.[2]

Brenda Stegall, the notary, testified that she was present during the entire transaction, was made aware that it was decedent's will, saw the testator and the other witnesses sign the will, that no substitution occurred, and that the testator's manner and behavior were no different than on any other time in which he visited the bank. In view of our findings, we do not reach the issue of whether Stegall could be found to be an attesting witnesss to satisfy the requirements of the statute.

As public policy in Tennessee favors upholding a will where it is possible to do so, *Leathers v. Binkley*, *supra*, we hold that the evidence satisfies the requirements of the statute as to the two attesting witnesses. We reverse the Chancellor's finding that the will should not be admitted to probate and remand with

_____

[2]The request to witness a will may be made by a third person as the testator's agent or representative. *In re: Estate of Bradley*, page 323.

the direction that the will be admitted to probate for further proceedings in this Estate.

The cost of the appeal is assessed to the appellees.

_____
Herschel P. Franks, J.

CONCUR:


_____
Charles D. Susano, Jr., J.


Separate Concurring Opinion ____
William H. Inman, Sr.J.

**FILED**

**August 29, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| IN RE: | ) | C/A NO. 03A01-9703-CH-00099 |
| | ) | |
| The Estate of ECKLE S. ROSS, | ) | KNOX CHANCERY |
| | ) | |
| Deceased. | ) | HON. H. DAVID CATE, |
| | ) | CHANCELLOR |
| | ) | |
| | ) | REVERSED AND REMANDED |

PAUL T. COLEMAN and JASON I. EPSTEIN, BAKER, DONELSON, BEARMAN & CALDWELL, Knoxville, for Appellant/Proponent First Tennessee Bank National Association.

A. BENJAMIN STRAND, JR., STRAND & GODDARD, Dandridge, for Appellee/Contestant Sonia Amos,
and
CARLYLE URELLO, PAINE, SWINEY, AND TARWATER, KNOXVILLE, for Glenda Ross, Stephanie Ross and Jennifer Ross.

## C O N C U R R I N G   O P I N I O N

By way of analogy, the rule is historic in this jurisdiction that jurors will not be allowed to stultify their verdict. If the rule were otherwise, many verdicts would assuredly be nullified depending upon the quality and quantity of the importunations employed.

It seems to me that this rule should apply with equal force to the attesting witnesses to the will, who at the time they affixed their signatures therto, made oath that they did so in accordance with statutory requirements.

To allow a sworn, attesting witness, (as contrasted to a third party) to impeach her action by testifying, at probate, contrarily to her signatory oath, thereby approbating her stultification, is, in effect, to vest in such witness the power to nullify a will whether by whim, importunation, or from corrupt motives.

I agree with the opinion of Judge Franks, but would go further and hold that an

7

attesting witness who does so under oath will not thereafter be allowed to stultify herself and swear the contrary.

_____
William H. Inman, Senior Judge