IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2003 Session

# ERNEST W. SIPE, BOTH AS ADMINISTRATOR OF THE ESTATE AND NEXT OF KIN OF GLADYS LOUISE SIPE, DECEASED v. F. RAYMOND PORTER, M.D.

**Appeal from the Circuit Court for Knox County**
**No. 1-638-96      Dale C. Workman, Judge**

**Filed October 30, 2003**

**No. E2002-02938-COA-R9-CV**

Ernest W. Sipe ("Plaintiff") sued F. Raymond Porter, M.D. ("Dr. Porter") regarding Dr. Porter's medical care of Gladys Louise Sipe. Plaintiff filed his expert's affidavit. Plaintiff's expert then was deposed. During this deposition, defense counsel questioned Plaintiff's expert about portions of Ms. Sipe's medical record that Plaintiff's expert had not reviewed previously. Dr. Porter then filed a motion for partial summary judgment. After his deposition, Plaintiff's expert reviewed all of the previously unreviewed records, and Plaintiff then filed a supplemental affidavit of his expert. The Trial Court applied the rule of cancellation and found that Plaintiff's expert's opinions were contradictory and that his testimony as an expert witness should be cancelled and disregarded as competent proof in this case. The Trial Court then granted Dr. Porter's motion for partial summary judgment. Plaintiff appeals. We reverse and remand.

**Interlocutory Appeal Pursuant to Rule 9, Tenn. R. App. P.;**
**Judgment of the Circuit Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Leslie A. Muse and Gary E. Brewer, Morristown, Tennessee, for the Appellant, Ernest W. Sipe.

Gary G. Spangler and Joseph M. Huffaker, Knoxville, Tennessee, for the Appellee, F. Raymond Porter, M.D.

# OPINION

## Background

Plaintiff sued Dr. Porter and Jeffrey S. Hecht, M.D. ("Dr. Hecht") for the wrongful death of his wife, Gladys Louise Sipe, alleging that Drs. Porter's and Hecht's medical care of Ms. Sipe deviated from the acceptable standard of care and caused "extensive suffering and [the] eventual death" of Ms. Sipe. Dr. Porter's treatment of Ms. Sipe involved, in part, the placement of a percutaneous endoscopic gastrostomy ("PEG") tube. Both Dr. Porter and Dr. Hecht filed motions for summary judgment. Dr. Hecht later withdrew his motion for summary judgment to allow Plaintiff to take a voluntary nonsuit as to him and an order was entered dismissing Dr. Hecht from the case.

Plaintiff responded to Dr. Porter's motion for summary judgment and filed the affidavit of his expert, Linas J. Adams, M.D. ("Dr. Adams"). The Trial Court heard argument and entered an order on March 21, 1997, granting partial summary judgment to Dr. Porter. The Trial Court held that Dr. Porter "should be granted partial summary judgment on the issue of whether he negligently performed the PEG tube operative procedure . . . ." The Trial Court further held that disputed issues remained regarding whether the "PEG tube operative procedure was medically indicated" and whether Dr. Porter obtained appropriate informed consent.

Dr. Adams' deposition was taken in February of 2002. The deposition questions and answers revealed that Dr. Adams had not reviewed all of the Fort Sanders and University of Tennessee Hospital records relating to Ms. Sipe's care. During this deposition, defense counsel provided Dr. Adams with portions of those records that Dr. Adams had not reviewed previously and then questioned Dr. Adams regarding those records.

Dr. Porter then filed a motion for partial summary judgment on the issue of whether the PEG tube operative procedure was medically indicated. In his brief filed in support of that motion, Dr. Porter stated that prior to Dr. Adams' deposition, Dr. Adams "had not fully considered and reviewed pertinent Fort Sanders and University of Tennessee Hospital records relating to Mrs. Gladys Sipe's nutritional and eating problems . . . ." Dr. Porter's brief quotes portions of Dr. Adams' deposition filed with the Trial Court where Dr. Adams was questioned regarding portions of the previously unreviewed records. The motion contends that Dr. Adams' answers to these deposition questions both contradicted his earlier opinions as expressed in his affidavit and, in fact, were favorable to Dr. Porter on the issue of whether the PEG tube operative procedure was medically indicated.

Plaintiff responded to the motion for partial summary judgment and filed the Supplemental Affidavit of Dr. Adams. After his deposition, Dr. Adams was provided with both the portions of the chart on which deposition questions were based and the surrounding records that had not been reviewed by Dr. Adams prior to his deposition. Dr. Adams reviewed all these additional records prior to signing his supplemental affidavit. The supplemental affidavit specifically states

that Dr. Adams had reviewed additional records that had not been made available to him at the time of his deposition. The supplemental affidavit expresses additional opinions, explains his opinions in light of the newly reviewed records, and, just like his original affidavit, opines that Dr. Porter fell below the acceptable standard of care in performing a PEG tube placement on Ms. Sipe.

The Trial Court entered an order on September 27, 2002, granting Dr. Porter partial summary judgment holding that Dr. Adams' opinions "on the issue of medical indication for the PEG procedure" are contradictory and holding that Dr. Adams' expert testimony "is consequently cancelled and is to be disregarded as competent proof in this cause." Plaintiff filed a motion for interlocutory appeal to this Court, which was granted.

## Discussion

Although not stated exactly as such, Plaintiff raises one issue on appeal: whether the Trial Court erred in its order granting partial summary judgment by holding that Dr. Adams' expert opinions are contradictory such that his testimony should be cancelled and disregarded as competent proof in this case.

As our Supreme Court has instructed:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88-89 (Tenn. 2000) (footnote omitted). A court is not to weigh the evidence when evaluating a motion for summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

It is a well settled rule in Tennessee that "contradictory statements by the same witness regarding a single fact cancel each other out." *Church v. Perales*, 39 S.W.3d 149, 169 (Tenn. Ct. App. 2000); *e.g., Johnston v. Cincinnati, N.O. & T.P. Ry. Co.*, 240 S.W. 429, 436 (Tenn. 1921); *In Re: Estate of Ross*, 969 S.W.2d 398, 400 (Tenn.Ct. App. 1997)*; Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978). A person who "without mistake induced by the opposite party, . . . has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose." *Stamper v. Venable*, 97 S.W. 812, 813 (Tenn. 1906) (citation omitted).

The rule of cancellation only applies, however, "when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence." *Taylor*, 573 S.W.2d at 483. "The testimony of a witness as to a particular fact may have value even though he has both affirmed and denied it if the contradiction is explained and is shown to have been the result of misunderstanding or inadvertence." *Johnston*, 240 S.W. at 435.

"[P]rior inconsistent statements may be explained, and such inconsistencies go only to the weight to be given the witness's testimony." *Baxter v. Vandenheovel*, 686 S.W.2d 908, 911 (Tenn. Ct. App. 1984).

At first glance, the opinions Dr. Adams expressed in his original affidavit and the opinions he expressed during his deposition appear to be contradictory. However, this apparent contradiction has been explained and shown to be the result of Dr. Adams forming these different opinions expressed at different times based upon the medical information and records he was furnished at each particular time. In short, the opinions expressed by Dr. Adams in his first affidavit, then in his deposition, and finally in his supplemental affidavit each were based on different sets of Ms. Sipe's medical records and information furnished to Dr. Adams at each of those three times. Dr. Adams' opinions expressed in his original affidavit were based upon the medical records he had reviewed at that time. At his deposition, he was furnished portions of additional medical records and he considered those portions of additional medical records, along with the medical records he originally reviewed, and expressed his opinions based on that set of records. Finally, after his deposition, Dr. Adams reviewed even more medical records so that the opinions expressed in his supplemental affidavit are based upon the records reviewed prior to his original affidavit, those portions of the additional medical records upon which he was questioned at his deposition, and the additional medical records reviewed after his deposition. The apparent difference in opinions expressed in his original affidavit and in his deposition occurred because Dr. Adams was presented at his deposition with portions of additional records he had not reviewed and then questioned regarding those portions. When Dr. Adams reviewed Ms Sipe's entire medical record, after his deposition, the opinions he formed were consistent with the opinions expressed in his original affidavit.

The apparent inconsistency in Dr. Adams' testimony has been explained, and, thus, the rule of cancellation does not apply. Any inconsistencies go to the weight to be given Dr. Adams' testimony. As the apparent inconsistencies in Dr. Adams' testimony have been explained and as a Trial Court is not to weigh the evidence on a motion for summary judgment, we hold that the Trial Court erred in granting Dr. Porter summary judgment on the issue of "whether the PEG procedure that [Dr. Porter] performed was medically indicated."

## Conclusion

The partial summary judgment of the Trial Court on the issue of "whether the PEG procedure that [Dr. Porter] performed was medically indicated" is reversed, and this cause is remanded to the Trial Court for such further proceedings as are required consistent with this Opinion. The costs on appeal are assessed against the Appellee, F. Raymond Porter, M.D.

_____
D. MICHAEL SWINEY, JUDGE